**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

**CIVIL NO. 3:04CV510**
**(3:97CR22)**

| | | |
|---|---|---|
| **ALONZO MACKINS, JR.,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **Vs.** | ) | **MEMORANDUM OF OPINION** |
| _____ | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** came on for hearing before the Court on February 27,

2006.  The Court gave the parties a further opportunity to respond to

additional issues raised by Order filed March 3, 2006.  Responses having

been filed, the Court grants in part the Petitioner's motion pursuant to 28

U.S.C. § 2255.

## I.  PROCEDURAL HISTORY

On July 6, 1998, the Petitioner was indicted with one count of

conspiracy to possess with intent to distribute and distribution of cocaine,

cocaine base, heroin and marijuana, in violation of 21 U.S.C. §§ 841 and

846, and with one count of conspiracy to money launder, in violation of 18 U.S.C. § 1956. On July 10, 1998, the Government filed an information pursuant to 21 U.S.C. § 841(b) alleging that the conspiracy involved in excess of 1.5 kilograms of cocaine base, in excess of 5 kilograms of cocaine, and in excess of 1 kilogram of heroin. The information did not address quantities of marijuana. On July 20, 1998, the Government filed an information pursuant to 21 U.C.S. § 851 providing notice of the Petitioner's prior felony drug conviction for possession of cocaine.[1]

After trial in September 1998, the Petitioner was found guilty by jury verdict of both counts. On November 16, 1999, the undersigned sentenced the Petitioner to life imprisonment in connection with the drug conviction and to 240 months imprisonment in connection with the money laundering conviction.

Petitioner appealed his convictions and sentences, raising as an issue the fact that his sentence of life imprisonment was based on a judicial finding by the undersigned of the quantities of drugs with which the conspiracy was involved. This finding, he correctly noted, was based on a

---

[1] For some reason, this information was filed again on August 31, 1998.

preponderance of the evidence, not a jury's finding beyond a reasonable

doubt. Thus, Petitioner argued on direct appeal that *Apprendi v. New*

*Jersey*, 530 U.S. 466 (2000), should be applied to his case. The Supreme

Court held in *Apprendi* that other than a prior conviction, any fact that

increases the penalty for a crime beyond the prescribed statutory

maximum must be submitted to the jury and proved beyond a reasonable

doubt. It is undisputed that in the Petitioner's case, this was not done. In

addressing this issue on Petitioner's direct appeal, the Fourth Circuit Court

of Appeals held:

> The 1998 superseding indictment charged each of the three
> defendants with conspiracy to distribute an unspecified quantity
> of drugs, subjecting each to a maximum possible term of no
> more than twenty years imprisonment.[2] The jury made no
> finding at all, let alone one beyond a reasonable doubt, of a
> specific threshold drug quantity; instead, the district court
> attributed amounts of illegal drugs to each defendant sufficient
> to subject each to life imprisonment. Virtually every circuit has
> held that "*Apprendi* dictates that in order to authorize the
> imposition of a sentence exceeding the maximum allowable
> without a jury finding of a specific threshold drug quantity, the
> specific threshold quantity must be treated as an element of an
> aggravated drug trafficking offense, *i.e.*, charged in the
> indictment and proved to the jury beyond a reasonable doubt."
> For this reason, as the Government acknowledges, "the

---

[2] This comment by the Circuit was, of course, erroneous as to the
Petitioner due to his prior felony drug conviction which subjected him to a
maximum sentence of 30 years. **21 U.S.C. § 841(b)(1)(C).**

imposition of sentences above 20 years' imprisonment [on the drug conspiracy count] in this case was error." We thus have to determine if this error requires us to grant appellate relief to any of the defendants. . . . If a defendant has made a timely and sufficient *Apprendi* sentencing objection in the trial court, and so preserved his objection . . . , we must reverse unless we find this constitutional error harmless beyond a reasonable doubt[.] But if a defendant has failed to make a timely and sufficient *Apprendi* sentencing objection and, therefore, failed to preserve his objection in the trial court, we can correct the forfeited error only if it constitutes "plain error" under Fed. R. Crim. P. 52(b).

. . .

[C]lose review of the record reveals that, although [Petitioner] objected to the presentence report['s] drug quantity calculations, [he] never objected to the failure of the jury to find a specific drug quantity. [He] did not invoke *Jones v. United States*, 526 U.S. 227 (1999), or any other *Apprendi* precursor.

**United States v. Mackins, 315 F.3d 399, 405-07 (4th Cir. 2003) (quoting United States v. Promise, 255 F.3d 150, 156-57 (4th Cir. 2001)) (other citations omitted) (footnote added).** The Fourth Circuit thus concluded that because there was overwhelming evidence of the drug quantities, plain error did not occur because "even if the error here affected Alonzo Mackins' . . . substantial rights, it does not seriously affect the fairness, integrity, or public reputation of judicial proceedings so as to warrant notice." ***Id.,* at 408.**

The Fourth Circuit also concluded that it was error to fail to sever the Petitioner's case from those counts charging Willie Mackins with a

counterfeit check scheme from the drug and money laundering counts. *Id.,*
**at 415.** However, the Circuit found the error was harmless. Finally, the
Circuit concluded that because Petitioner did not object to the submission
of a general verdict to the jury, error sufficient to be noticed did not occur.
*Id.*, **at 415-16.** The Petitioner's petition for a writ of *certiorari* to the
Supreme Court was denied on October 6, 2003. **United States v.**
**Mackins, 540 U.S. 895 (2003).** As a result, the Petitioner's motion
pursuant to § 2255 which was filed on September 30, 2004, was timely.

On January 4, 2006, the undersigned dismissed most of the claims
raised by the Petitioner and asked the Government to respond to issue of
ineffective assistance of counsel. **Memorandum of Decision, filed**
**January 4, 2006.** The undersigned denied the Petitioner's claims for relief
based on the following: (1) Government witnesses, who were coached by
the prosecution as to their testimony, were former clients of the Petitioner's
bail bonding business who had motives to lie against him; (2) defense
counsel failed to interview and call as witnesses Alfred Logan, Ramond
Morgan and Scott Ritchie; (3) defense counsel refused to challenge the
fact that no African Americans were in the jury venire; (4) defense counsel
failed to properly prepare the Petitioner for his testimony; (5) there was not

a unanimous verdict as to each element of the charge of conspiracy to possess with intent to distribute because there was not a separate verdict as to each drug alleged in the indictment; (6) the general verdict failed to attribute to the Petitioner the specific quantities of drugs with which he was involved; (8) trial counsel failed to order transcripts prior to the sentencing hearing, merely accepting the Government's version of evidence as to the quantities involved; (9) trial counsel failed to prepare for the forfeiture aspect of the case and failed to demand a jury trial thereof; and (10) the undersigned erred at the sentencing hearing.

The undersigned reserved ruling as to this issue: whether sentencing counsel was ineffective in failing to join in the *Apprendi* argument made by counsel for a co-defendant.  The Court found that an evidentiary hearing was necessary as to this issue and appointed counsel to represent the Petitioner.


## II.  EVIDENCE PRODUCED AT THE HEARING

The Petitioner testified during the hearing that while he was in pretrial detention, he saw flyers and newsletters advising defendants to object to drug quantities.  After the jury convicted him, he did speak with his

attorney, Marshall Swann, about this issue who told him that the issue would be handled. Every time that the Petitioner saw his attorney, he asked about this issue. Each time, Swann responded that he was or would be working on the issue. The Petitioner admitted that he did not raise the issue himself during the sentencing hearing because he was nervous and frightened. The first time that the Petitioner realized this issue had not been preserved was while his case was on appeal.

Swann also testified during the hearing. Swann admitted that he was unaware of any issue involving the fact that the indictment did not allege drug quantities until after the *Apprendi* decision was issued. Swann also testified that he filed a pretrial motion to adopt any motions made by other defense counsel as a precaution.[3] Swann testified that he did not have any discussion with the Petitioner either before or after the trial about the

---

[3] The Fourth Circuit specifically rejected this explanation as follows: "Both Alonzo Mackins and Ivey Walker maintain on appeal that they adopted all of Willie Mackins' sentencing objections. Alonzo Mackins did adopt all of the pre-trial motions of his co-defendants. But, despite our specific request that they do so, neither he nor Ivey Walker has been able to point to any place in the record in which one or both of them adopted any of Willie Mackins' objections at sentencing; and we have found no record support for their contention that they did adopt Willie Mackins' sentencing objections." ***Mackins*, 315 F.3d at 407 n.4.**

failure of the indictment to allege drug quantities. Nor did he have such discussions with other attorneys. Swann did not know that Willie Mackins' attorney raised this issue during the sentencing hearing. And, although he was present during Willie Mackins' sentencing hearing, Swann does not recall this issue being argued. In fact, Swann was unaware of the issue until he read the Fourth Circuit's decision on the appeal. And, he admitted that he was unaware of any *Apprendi* precursor decisions. Swann acknowledged that he met with the Petitioner prior to sentencing but did not recall any discussion concerning drug quantities; his recollection was that the meeting involved the forfeiture aspect of the case. His strategy at the sentencing was to attack the credibility of the Government's witnesses and the Petitioner's co-defendants.

The Petitioner's wife testified during the sentencing hearing that she had coincidentally run into Swann in December of 2005. During that chance encounter, she claims, Swann admitted to her that he did not do an adequate job of representing the Petitioner and had no intention of doing so. The Court finds the testimony of this witness incredible and tainted by her relationship with the Petitioner. In particular, the Court finds it would be

most unusual for an attorney to admit to the wife of a client that he had no intention of adequately representing a client.

### III.  DISCUSSION

**A.      The failure to preserve the *Apprendi* issue**

The first issue is whether Swann was ineffective in failing to join the argument made by counsel for Willie Mackins, an argument which would have preserved for appeal the *Apprendi* issue.  The undersigned has previously noted that an attorney is not ineffective for failing to anticipate a change in law.  ***See, e.g., United States v. McNamara*, 74 F.3d 514, 516 (4th Cir. 1996).**  And, the Court has previously noted that the issue here is not the failure to have anticipated such a change, but the failure to join in an argument forecasting that change when it was made by co-counsel.

The Petitioner was sentenced in November 1999.  *Apprendi* was decided seven months later.  The issue here is whether sentencing counsel should have joined the argument made by co-counsel.  Swann has admitted that he was totally unaware that Willie Mackins' attorney raised this issue.  However, he testified that his sentencing strategy was to attack the credibility of the Government's witnesses.  Thus, Swann did not make a

conscious decision not to raise the issue; he simply failed to predict *Apprendi*. The undersigned cannot find that Swann was ineffective for failing to join in the *Apprendi* precursor arguments. **See, e.g., United States v. Haynesworth, 34 F. App'x 133 (4th Cir. 2002); Webb v. United States, 2006 WL 399338 (E.D.N.C. 2006); United States v. Claiborne, 388 F.Supp.2d 676 (E.D. Va. 2005), appeal dismissed, 161 F. App'x 280 (4th Cir. 2006).**

B. **Does this case qualify for relief on other grounds**

Title 28 U.S.C. §2255 provides for relief on the following grounds: (1) the sentence was imposed in violation of the Constitution; (2) the sentence was imposed in violation of the laws of the United States; (3) the Court was without jurisdiction to impose the sentence; (4) the sentence was in excess of the maximum authorized by law; or (5) the sentence is otherwise subject to collateral attack. By virtue of the rulings made in this matter, the undersigned has concluded that the Petitioner's sentence was not imposed in violation of his right to effective assistance of counsel and the sentencing court had jurisdiction to impose the sentence. However, the following issues remain: (1) whether sentencing a defendant to a sentence

imposed in violation of the laws of the United States or in excess of the maximum authorized by law violates his constitutional rights[4]; (2) whether the Petitioner is entitled to relief because his sentence was imposed in violation of the laws of the United States or because his sentence was in excess of the maximum authorized by law; or (3) the sentence is otherwise subject to collateral attack.

> While the statutory language [of § 2255] is rather general, the Supreme Court has narrowly confined the scope and availability of collateral attack for claims that do not allege constitutional or jurisdictional errors.  Such claims are properly brought under § 2255 only if the claimed error is "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure."  The error must "present exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent.". . . The reason for so sharply limiting the availability of collateral attack for nonconstitutional, nonjurisdictional errors is that direct appeal provides criminal defendants with a regular and orderly avenue for correcting such errors.

**Knight v. United States**, 37 F.3d 769, 772-73 (1ˢᵗ Cir. 1994) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)) (other citations omitted).

---

[4] Enhancing a sentence based on facts found by a court alone and not the jury violates the Sixth Amendment imperative that any fact other than a prior conviction which is necessary to support a sentence exceeding the maximum authorized by the facts established by a jury verdict must be proved to a jury beyond a reasonable doubt.  **Apprendi, supra.**

Here, on direct appeal, the Fourth Circuit made the following findings: (1) "[A]s the Government acknowledges, 'the imposition of [a] sentence[ ] above [3]0 years' imprisonment [on the drug conspiracy count] in this case was error[,]" *Mackins*, **315 F.3d at 405**; (2) "Although forfeited error [as in this case] can still provide the basis for reversal on appeal, it must meet a more exacting standard of review[,]" *id.*; (3) Where a defendant failed to preserve the *Apprendi* objection at trial, "we can correct the forfeited error only if it constitutes 'plain error' under Fed. R. Crim. P. 52(b)[,]" *id.*, **at 406;** (4) Under that standard, the defendant must bear the burden of proving to the appellate court that the error was plain, affected his substantial rights, and should be noticed, *id.*; (5) The Petitioner made timely objections, orally and in writing, prior to sentencing to the drug quantities attributed to him and thus, the objections were timely, *id.*; (6) The Petitioner did not make an objection prior to the verdict to the failure of the indictment to charge a specific quantity of drugs, *id.*; (7) Willie Mackins, "[a]lthough not artful," did raise the issue prior to sentencing and thus preserved *Apprendi* error, *id.*, **at 407;** (8) "In this case, the Government concedes not only that the district court erred 'by imposing enhanced sentences in the absence of . . . an allegation [regarding specific drug quantities], but also that error was also

'plain' . . . within the meaning of Federal Rule of Criminal Procedure 52(b)[,]'" *id.*, **at 408;** (9) But, the evidence against the Petitioner was of such quantity that "even if the error here affected . . .  Alonzo Mackins' substantial rights," the Circuit declined to notice this plain error because it did not "seriously affect the fairness, integrity or public reputation of judicial proceedings[,]" *id.*; (10) As to Willie Mackins, on the other hand, the error, considered under a different standard, both affected his substantial rights and was not harmless.  *Id.*, **at 409.**  The Fourth Circuit thus clearly stated that this Court erred in sentencing the Petitioner to life imprisonment. Therefore, the issue is whether, on a collateral proceeding, this Court may rectify that error on any or all of the above grounds.

At the time the Petitioner was sentenced, *Apprendi* had not been decided.  By the time of his appeal, it was settled law and was raised on appeal.  Although the Government conceded that the error was plain and the Circuit found that the error had affected the Petitioner's substantial rights, it declined to notice the error.  However, in considering the case of *United States v. Hughes*, 401 F.3d 540 (4th Cir. 2005), the Fourth Circuit ruled exactly the opposite.  *Apprendi* announced a procedural rule of constitutional law, not a substantive one.  ***United States v. Morris*, 429**

**F.3d 65, 69 n. 6 (4ᵗʰ Cir. 2005).** But in *Hughes*, the Fourth Circuit ruled as

follows:

> Hughes' sentence exceeded the maximum sentence then
> authorized by the facts found by the jury alone, in violation of
> *Booker* [*v. United States*, 543 U.S. 220 (2005)]. However,
> Hughes raised this issue for the first time on appeal. Because
> this issue was not advanced in the district court, we review the
> district court decision for plain error. Notwithstanding the heavy
> burden that a defendant faces when alleging plain error in
> sentencing, we conclude that the district court plainly erred in
> imposing a sentence on Hughes that exceeded the maximum
> allowed based on the facts found by the jury alone.
> . . .
> When Hughes was sentenced, any claim that imposition of a
> sentence greater than the maximum authorized under the
> guidelines by the facts found by the jury alone would violate the
> Sixth Amendment was foreclosed by circuit precedent. *Booker*
> has now abrogated our previously settled law. The error
> committed by the district court in sentencing Hughes was
> therefore plain.
>
> "Third, [Hughes] must establish that the error affected his
> substantial rights, *i.e.*, that it was prejudicial." To demonstrate
> that the error was prejudicial, Hughes must show that "the error
> actually affected the outcome of the proceedings."
> . . .
> The question under the third prong of the plain error analysis is
> thus whether Hughes has established that the sentence
> imposed by the district court as a result of the Sixth
> Amendment violation "was longer than that to which he would
> otherwise be subject[.]" *United States v. Angle*, 254 F.3d 514,
> 518 (4ᵗʰ Cir. 2001) (en banc). Hughes has made such a
> showing. As explained above, the maximum sentence
> permitted by the jury verdict was 12 months. Unaware of the
> strictures imposed by the Sixth Amendment, however, the
> district imposed a sentence of 46 months. We therefore

conclude that the error affected Hughes' substantial rights. *Accord, United States v. Promise*, 255 F.3d [at] 160 (holding that an *Apprendi* error resulting in an increased sentence affected the defendant's substantial rights.).

. . .

In sum, *Promise* and *Angle* indicate that the prejudice inquiry in the case of a Sixth Amendment violation under *Apprendi* and its progeny . . . is whether the district court could have imposed the sentence it did without exceeding the relevant Sixth Amendment limitation. If the answer to this inquiry is "yes," as was the case in *Angle*, then the defendant has failed to demonstrate an effect on substantial rights; if the answer is "no," as in *Promise*, the defendant has made the required showing.

. . .

Finally, it remains within our discretion to determine whether the district court error warrants reversal. "Our discretion is appropriately exercised only when failure to do so would result in a miscarriage of justice, such as when the defendant is actually innocent or the error seriously affects the fairness, integrity or public reputation of judicial proceedings." We conclude that exercise of our discretion is warranted here. As a result of a plain and prejudicial Sixth Amendment error, Hughes was sentenced to a term of imprisonment nearly four times as long as the maximum sentence authorized by the jury verdict. There can be no doubt that failure to notice such an error would seriously affect the fairness, integrity or public reputation of judicial proceedings.

**United States v. Hughes, 401 F.3d 540, 547-48, 550-51, 555 (4th Cir. 2005) (quoting United States v. Hastings, 134 F.3d 235, 240, 244 (4th Cir. 1998)).**

This Court is unable to divine any difference between the Petitioner's case and that of Hughes.[5]  The Petitioner's sentence exceeded the maximum sentence authorized by the facts found by the jury alone, in violation of *Apprendi*.  He raised the issue for the first time on appeal.  The sentence imposed by the undersigned was erroneous because instead of sentencing him to the statutory maximum of 30 years, he was sentenced to life imprisonment.[6]  The error was plain and affected his substantial rights

---

[5] The undersigned obviously recognizes that *Hughes* was decided pursuant to *Booker.*  Nonetheless, the discussion of the *Hughes* decision of *Apprendi*, *Promise*, and *Angle* as well as the application of the plain error standard, shows that the Fourth Circuit's decision in the Petitioner's case is in conflict with later decisions.  While that conflict stems, in some cases, from the fact that those cases were decided pursuant to subsequent Supreme Court precedent, the substantive law pronounced by the Circuit is equally applicable to the Petitioner's case.  Likewise, the undersigned is aware that when two panel decisions are in conflict, the earlier decision controls until it has been overruled by a subsequent *en banc* decision or Supreme Court decision.  **See, United States v. Thompson, 421 F.3d 278, 288 n.3 (4th Cir. 2005) (Wilkins, C.J. dissenting) (citing *McMellon v. United States*, 387 F.3d 329, 333-34 (4th Cir. 2004) (*en banc*)), cert. denied, 126 S. Ct. 1462 (2006).**  The fact is that while *Mackins* has not been overruled, the Circuit has pronounced *Hughes* as application of law directly in conflict with its decision in *Mackins*. **See, United States v. Smith, 441 F.3d 254, 283-84 (4th Cir. 2006) (Dever, J. concurring in part and dissenting in part), petition for cert. filed (U.S. Jul. 10, 2006) (No. 06-5223).**  The undersigned cites that conflict as a ground for granting the extraordinary relief provided herein.

[6] The Government filed notice pursuant to § 851 of the Petitioner's prior felony drug conviction.

because the undersigned could not have imposed the life sentence without exceeding the Sixth Amendment limitation. The only difference is that in *Hughes*, without any further explanation, the Circuit stated that there could "be no doubt that failure to notice such an error would seriously affect the fairness, integrity or public reputation of judicial proceedings." ***Id.*, at 555.** Yet, in the Petitioner's case, the Circuit held the opposite.

The undersigned finds there has been a violation of the Petitioner's constitutional right not to be sentenced in excess of the maximum sentence authorized by the statute except on facts proved to a jury beyond a reasonable doubt. Just as the undersigned was in error when Willie Mackins was sentenced in excess of the maximum sentence authorized, it was in error in sentencing the Petitioner. The fact that the Fourth Circuit declined to notice the error in the Petitioner's case while noticing it in the case of Willie Mackins is of no moment to the underlying constitutional violation. The Petitioner's sentence was erroneous, the Government concedes it was erroneous, the Government concedes it affected the Petitioner's substantial rights, and concedes that the maximum sentence to which the Petitioner could have been sentenced was 30 years. "In *Apprendi*, the [Supreme] Court held that the Sixth Amendment requires

juries to find beyond a reasonable doubt the existence of 'any fact that increases the penalty for a crime' beyond 'the prescribed statutory maximum.'" ***Booker*, 543 U.S. at 326.** *Apprendi* "announced the rule of constitutional procedure [that] the jury must decide any fact that increases the penalty for a crime beyond a statutory maximum." ***Logan v. United States*, 434 F.3d 501, 507 (6th Cir. 2006).** The Petitioner's sentence violated that right.

The Government has not argued that considering *Apprendi* issues in the context of this § 2255 motion is an inappropriate retroactive application of *Apprendi* on collateral review. *Apprendi* was decided on June 26, 2000. The Petitioner's conviction and sentence became final on June 23, 2003, when the Supreme Court denied his petition for a writ of *certiorari*. ***Beard v. Banks*, 542 U.S. 406 (2004).** As a result, *Apprendi* may be considered in this collateral review because it was raised as an issue during the Petitioner's direct appeal. ***Bousley v. United States*, 523 U.S. 614, 621 (1998) (failure to challenge a matter on direct appeal absent certain compelling circumstances bars collateral review); *United States v. Williams*, 67 F. App'x 164 (4th Cir. 2003); *United States v. Boyd*, 43 F. App'x 662 (4th Cir. 2002).**

The Government does argue, however, that the Fourth Circuit's decision on appeal constitutes the law of the case from which the undersigned may not deviate, citing *United States v. Aramony*, 166 F.3d 655 (4th Cir. 1999).

> Under the law of the case doctrine, as a practical matter, once the "decision of an appellate court establishes 'the law of the case,' it 'must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal . . . unless: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice."

*Id.*, at 661 (quoting *Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988)) (other citations omitted).  The Government has not cited any case holding that the law of the case doctrine applies to this separate civil action brought pursuant to § 2255.  Nonetheless, as noted *infra*, the prior decision of the undersigned was clearly erroneous and has worked a manifest injustice.  *Agostini v. Felton*, 521 U.S. 203 (1997) ("The doctrine [of the law of the case] does not apply if the court is 'convinced that [its prior decision] is clearly erroneous and would work a manifest injustice.'" (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983))).  The Court can perceive of few legal scenarios more manifestly unjust than keeping a man in prison for the rest of his life when

the correct sentence is 30 years imprisonment.[7]  **Dobbs v. Zant, 506 U.S. 357, 359 (1993) ("As the Court of Appeals itself acknowledged, its refusal to review the transcript left it unable to apply the manifest injustice exception to the law of the case doctrine, and hence unable to determine whether its prior decision should be reconsidered."); United States v. Mikalajunas, 186 F.3d 490, 497-98, 502 (4th Cir. 1999) (Murnaghan, J. dissenting) ("I do not believe that the state's interest in finality outweighs even one year of a man's life[;]" "[T]he issue is whether . . . it is fundamentally unjust to keep a prisoner in jail for one year . . . longer than the correct sentence dictated by the [statute];" "The real issue, though, is whether it is a complete miscarriage of justice to keep a defendant imprisoned beyond the defendant's correct sentence.  I think the answer is clear.").**

But the Court also finds that relief is warranted on the other grounds provided by § 2255, that is, the Court finds that the Petitioner's sentence is the result of a non-constitutional error which involves "a fundamental defect

_____

[7] At the time of his sentencing, the Petitioner was 48 years old.  While a 30 year sentence is certainly lengthy, it would afford him the possibility of some day leaving prison.  The life sentence guarantees that the Petitioner will die in jail.

which inherently results in a complete miscarriage of justice" or is "inconsistent with the rudimentary demands of fair procedure." ***Hill, supra*.**

First, § 2255 provides for relief where "the *sentence* was in excess of the maximum authorized by law." ***Knight*, 37 F.3d at 772 (quoting *Hill, supra*, at 426-27 (1962) (emphasis added).** The nonconstitutional nature of the relief sought does not preclude the Petitioner from seeking relief pursuant to § 2255. ***Logan, supra*.** "Section 2255 extends to relief based on 'laws of the United States.'" ***Id.*** The law at issue here is the penalty provision of 21 U.S.C. § 841. "Indeed, in *Davis v. United States*, 417 U.S. 333, 346 (1974), the Supreme Court held that 'the fact that a contention is grounded not in the Constitution, but in the 'laws of the United States' would not preclude its assertion in a § 2255 proceeding.'" ***Id.*, at 508.**

> The Supreme Court has on four occasions considered whether a particular nonconstitutional, nonjurisdictional claim was properly brought under § 2255. . . .  In one of these cases, the Court found that the error did justify collateral attack.  *Davis* [supra] (subsequent change in substantive law making defendant's former behavior lawful *does* constitute sufficient basis for collateral attack).

***Knight*, 37 F.3d at 773.** "The proper 'fundamental defect' inquiry asks whether the 'defendant stands convicted of 'an act that the law does not make criminal.'" ***Logan*, *supra*, at 509 (quoting *Bousley, supra*, at 620)**

**(other citations omitted).**  While *Apprendi* did not make the Petitioner's former behavior lawful, it did make that behavior unpunishable except according to facts found beyond a reasonable doubt by a jury verdict.  **Id., at 511.**  Here, those facts mandated a sentence not to exceed 30 years imprisonment.  "The Supreme Court has established that when the prejudice is so severe as to be fundamentally unjust – *i.e.*, the defendant is . . . sentenced, when he is actually not guilty of that . . . sentence – a prisoner need not show cause."  ***Mikalajunas*, 186 F.3d at 498 (internal citations omitted).**  "[T]he issue is whether . . . it is fundamentally unjust to keep a prisoner in jail for one year . . . longer than the correct sentence dictated by the [statute]."  *Id.*  The Fourth Circuit has held it was a fundamental miscarriage of justice to require a defendant to serve time under sentencing provisions of which he was actually innocent.  ***United States v. Maybeck*, 23 F.3d 888 (4th Cir. 1994); *see also, Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) ("[W]e have previously applied the 'complete miscarriage of justice' standard in the sentencing context to a defendant's § 2255 challenge to his guilty plea where the district court had committed a procedural error in failing to inform the defendant of the possibility of a fine and a special**

**parole term.");** *United States v. Ramey*, **217 F.3d 842 (table), 2000 WL 790959 (4th Cir. 2000) (§ 2255 motion granted where the petitioner was punished for an act which was subsequently determined to be not illegal).**

> If [the Court] do[es] not correct this error, [Petitioner] will serve a term of imprisonment [of life which is] longer than required by the [statute]. [The Court] cannot casually ignore this fact because of an overly-strict adherence to technical requirements. [Y]ears of a man's life is not a trifling thing. No court of justice would require a man to serve . . . undeserved years in prison when it knows that the sentence is improper. The fairness, integrity and public reputation of our judicial system demand that [the undersigned] correct [the Petitioner's] sentence.

*United States v. Ford*, **88 F.3d 1350, 1356 (4th Cir. 1996);** *accord, Stone v. Powell*, **428 U.S. 465, 477 n.10 (1976) ("Even those nonconstitutional claims that could not have been asserted on direct appeal can be raised on collateral review only if the asserted error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" (quoting** *Davis, supra*, **at 346));** *Davis, supra* **(holding cognizable under § 2255 a nonconstitutional claim, which had been raised on direct appeal, involving a change in the controlling law of a federal circuit).** As noted by the Fourth Circuit in

*United States v. Bonnette*, 781 F.2d 357, 364 (4th Cir. 1986), a prisoner may meet "the 'miscarriage of justice' / 'exceptional circumstances' standard for nonconstitutional section 2255 motions because of the possibility that he had been convicted under an erroneous interpretation of the law." ***Id.* (citing *Davis, supra*).** When a defendant is sentenced to a term of imprisonment based on a jury's general verdict, this is "error [that] amounts to a miscarriage of justice that seriously affects the fairness, integrity, or public reputation of judicial proceedings" and constitutes a "complete miscarriage of justice." **Ballard v. United States, 400 F.3d 404, 410 (6th Cir. 2005) (internal quotations and citations omitted).**

The Court is aware that "[a]bsent extraordinary circumstances, a defendant has no . . . fundamental interest in whether a sentence reflects his . . . relative culpability with respect to his . . . co-defendants." **United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995).** The Court finds the circumstances of the Petitioner's case constitute extraordinary circumstances. **Ramey, supra (Petitioner's § 2255 motion granted because his punishment "resulted in a fundamental miscarriage of justice and presents exceptional circumstances justifying collateral relief[.]").** This is not a situation, like that in *Bokun*, where a sentence

reduction resulted in the sentencing disparity.  Here, the same statutory maximum should have been applied to both Willie Mackins and the Petitioner.  **United States v. Joyner, 170 F. App'x 258, 261 (4ᵗʰ Cir. 2006) ("Although Joyner did not object in the district court to the 221-month sentence imposed on Count Two, we agree with the parties that the sentence exceeds the five year statutory maximum provided in 21 U.S.C. § 841(b)(1)(D)[.]  The sentence thus constitutes plain error . . . that affects substantial rights and if failure to correct the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings," it must be noticed); Brough v. United States, 2002 WL 32157202 (D.R.I. 2002) ("[I]t would be patently unfair and unjust for the same amount of cash to mean one thing in Brough's case and another in Tucker's case." (quotations omitted)).**  "[T]he plain language of § 2255 . . . is, after all, phrased in terms of challenges to *sentences*."  **Mikalajunas, 186 F.3d at 497.**

Likewise, § 2255 also provides for relief based on any ground that "is otherwise subject to collateral attack[.]"  **28 U.S.C. § 2255; Mateo v. United States, 398 F.3d 126, 136 (1ˢᵗ Cir. 2005) ("'[W]hether on constitutional or grounds otherwise subject to collateral attack, we**

**concur with the district court's recognition of federal habeas**

**jurisdiction.'"** (quoting *United States v. Pettiford*, 101 F.3d 199, 201

**(1ˢᵗ Cir. 1996))).** The fourth prong of § 2255 encompasses other than

constitutional or statutory error. *See, e.g., United States v. DiRusso*, 548

**F.2d 372, 374-75 (1ˢᵗ Cir. 1976) (noting that § 2255 is often a vehicle for**

**correcting sentences based upon errors made by the sentencing**

**judge).** There is no doubt but that the issue in this case is a sentencing

error made by the sentencing judge; indeed, the Fourth Circuit has so held.

*Mackins, supra*; *Joyner, supra* (citing *Mackins*); *United States v.*

*Graham*, 75 F. App'x 145, 149 n.3 (4ᵗʰ Cir. 2003) ("It is worth

**emphasizing that it is always error for a district court to impose a**

**sentence exceeding the maximum sentence provided in the statute**

**for an indeterminate quantity of the drug in question[.]").** "[I]t would be

patently unfair and unjust for the same amount of [drugs] to mean one

thing in [Willie Mackins'] case and another in [the Petitioner's] case."

*Brough, supra*. And, as to the error committed by the undersigned, the

Fourth Circuit has noted:

> "[I]n most cases [this] means that the error must have been
> prejudicial: It must have affected the outcome of the district
> court proceedings." Because Hardin did not receive a life

sentence on any other count, the outcome of the sentencing was affected by the error.  If the district court had sentenced Hardin under the Guidelines . . ., he would have received a consecutive term of 84 months imprisonment.  For Hardin, who was twenty-six years old at the time of his sentencing, there is no question that his substantial rights were affected by receiving a consecutive life sentence instead of a thirty-seven year total term of imprisonment[.] . . .  *See United States v. Ford*, 88 F.3d [at] 1356 (holding that the defendant's substantial rights were affected by error increasing his total imprisonment by three years); ***cf. United States v. Mackins*, 315 F.3d [at] 410 (*applying harmless error and holding that a forty-six-year-old defendant's substantial rights were affected by receiving a life sentence when the Guidelines only mandated a sentence of ninety years*).**

. . .

The district court here . . . was not required to impose a life sentence. . . .  [A]t no time did the district court indicate that it believed Hardin deserved a life sentence or that it would have imposed a life sentence on another count[.] . . .  Thus, Hardin's substantial rights were affected by the error.  Finally, we consider whether we should notice the error in Hardin's sentencing.  ***We conclude that we should because to require a man to spend his life in prison when under the law he should serve his sentence by age 63 "seriously affects the fairness, integrity or public reputation of judicial proceedings."  We came to the same conclusion in Ford,* [supra]*, because "[n]o court of justice would require a man to serve three [or more] undeserved years in prison when it knows that the sentence is improper."***

**United States v. Hardin, 108 F. App'x 74, 79-80 (4ᵗʰ Cir. 2004) (quoting**

**United States v. Olano, 507 U.S. 725, 734, 736 (1993)) (emphasis**

**added).**  Lest there be any doubt in this case, the undersigned would not

have sentenced the Petitioner to a life sentence but for the drug quantities

argued for by the Government at sentencing.  This Court finds that in addition to the fact that a complete miscarriage of justice has occurred, the Petitioner's sentence is otherwise subject to collateral attack.

## IV.  ORDER

**IT IS, THEREFORE, ORDERED** that the Petitioner's motion for relief pursuant to 28 U.S.C. §2255 is hereby **GRANTED IN PART AND DENIED IN PART**.  A Judgment is filed herewith.

Signed: August 14, 2006

Lacy H. Thornburg
United States District Judge